**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 3, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DINO NICK MITCHELL,

Defendant-Appellant.

No. 09-4141

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 2:07-CR-00149-TS-4)**

---

Bretta Pirie (Steven B. Killpack, Utah Federal Defender, with her on the briefs), Utah Federal Defender's Office, Salt Lake City, Utah, for Appellant.

Elizabethanne C. Stevens, Assistant United States Attorney (Carlie Christensen, Acting United States Attorney, with her on the brief), Office of the United States Attorney, Salt Lake City, Utah, for Appellee.

---

Before **TYMKOVICH**, **SEYMOUR**, and **HOLMES**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

At Dino Mitchell's conspiracy trial, the government introduced evidence of his withdrawn guilty plea in its case-in-chief, including statements from his plea agreement and plea colloquy. Ordinarily a defendant's withdrawn guilty plea or

his statements during plea discussions are inadmissible under Federal Rule of Evidence 410. But in this case Mitchell executed a plea agreement that waived his right to Rule 410's protections. When he later withdrew from the plea agreement and went to trial, the district court allowed the statements to be admitted. He now argues on appeal that he did not enter into the plea agreement voluntarily and that the district court erred in allowing him to withdraw from the plea agreement without also barring the use of his incriminating statements at trial.

We agree with the district court on both issues. Mitchell voluntarily entered into the plea agreement and waived Rule 410's protections. Under Supreme Court precedent, *United States v. Mezzanatto*, 513 U.S. 196 (1995), the government is entitled to use plea statements during its case-in-chief at trial. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. Background

Dino Mitchell and several co-conspirators were indicted on one count of conspiracy to transport stolen securities in violation of 18 U.S.C. §§ 371 and 2314. Mitchell's co-conspirators pleaded guilty to the charge pursuant to plea agreements with the government, but Mitchell refused and planned to go to trial. But on the day Mitchell's trial was set to begin, he entered into a plea agreement with the government and pleaded guilty.

The plea agreement set forth facts supporting the elements of the conspiracy charge and contained assurances Mitchell was aware of the constitutional and statutory rights he was waiving by pleading guilty. Specifically, Mitchell agreed that

> if I withdraw my plea of guilty, I shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the defendant's statements pursuant to this agreement, or any leads derived therefrom, should be suppressed or are inadmissible at any trial, hearing, or other proceeding.

R., Vol. 1, p. 33. The agreement required the government to recommend the low end of the sentencing guidelines range but recognized the sentence was ultimately within the discretion of the court, in accordance with 18 U.S.C. § 3553(a). During the plea colloquy, Mitchell affirmed he was not threatened or coerced into pleading guilty.

After the plea was entered, Mitchell obtained new counsel and filed a motion to withdraw his guilty plea. The motion claimed Mitchell had a "fair and just reason," FED. R. CRIM. P. 11(d)(2)(B), to withdraw his plea, referencing the factors set forth by this court in *United States v. Yazzie*, 407 F.3d 1139, 1142 (10th Cir. 2005) (*en banc*). Most prominently, Mitchell contended his plea was not knowing and voluntary because his previous counsel had pressured him into pleading guilty. The government opposed the motion, and the district court

denied it, finding the "Rule 11 colloquy here clearly demonstrates that [Mitchell] entered his plea knowingly and voluntarily." R., Vol. 1, p. 77.

Roughly one week later, Mitchell filed a motion to reconsider. He submitted with the motion two letters written by his previous counsel as evidence of their deteriorating relationship. One letter was addressed to Mitchell's brother and encouraged him to convince Mitchell to accept the plea deal. Counsel stated, "I can no longer talk to Dino, if only because he won't listen to me because I won't say what he wants to hear." R., Vol. 1, p. 92. The other letter was written directly to Mitchell and discussed trial strategy as well as the prison sentence Mitchell likely would receive with, and without, accepting the plea agreement. Finally, counsel opined, "Dino, you would be a fool not to take this plea offer!!" R., Vol. 1, p. 95.

Based on these letters, the district court granted Mitchell's motion to withdraw his guilty plea. While concluding the advice to plead guilty was no doubt sound, the district court expressed concern about the possible "undue influence" exerted by Mitchell's counsel, especially "considering Defendant's lack of reading skills, lack of education, and general lack of understanding of the legal system." R., Vol. 1, pp. 118–19 (footnotes omitted). But even with these concerns, the district court nonetheless found Mitchell's plea to have been knowing and voluntary. Acknowledging this was "an extremely close case," the

court determined Mitchell's constitutional right to a jury trial weighed in favor of granting his motion to withdraw his guilty plea. *Id.* at 119–20.

Before trial began, the government filed a motion in limine regarding the admissibility of statements Mitchell made in connection with his guilty plea. The government sought to admit these statements not merely as rebuttal evidence, but also in its case-in-chief. In support of its motion, the government cited Mitchell's waiver of the Rule 410 protections in his plea agreement that allowed his statements to be used against him in the event he withdrew his guilty plea. Mitchell opposed the motion, claiming admission of these statements would be more prejudicial than probative, in violation of Rule 403. After considering these arguments, the district court granted the motion and concluded the Supreme Court's reasoning that Rule 410 waivers permit admission of impeachment evidence, see *United States v. Mezzanatto*, 513 U.S. 196 (1995), extended to permit the government to use Mitchell's plea statements in its case-in-chief. The court also rejected Mitchell's Rule 403 argument on the basis the plea statements' highly probative value was not substantially outweighed by any prejudice.

Evidence of Mitchell's guilty plea, including statements from the plea agreement and plea colloquy, was used extensively in the government's case-in-chief. In the government's opening statement, it told the jury Mitchell had admitted under oath the charged offense. A government witness described the hearing in which Mitchell pleaded guilty and read portions of the plea colloquy

transcript in which Mitchell admitted to the facts of the offense. As well, during cross-examination of Mitchell, the government questioned him regarding his guilty plea. Finally, the government again emphasized Mitchell's guilty plea during its closing argument.

At the close of trial, Mitchell was convicted and sentenced to 27 months' imprisonment and 36 months of supervised release. He timely appealed.

## II. Analysis

Evidence from plea negotiations is ordinarily inadmissible under Rule 410. But the protections of the Rule may be waived: "[A]bsent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of [Rule 410] is valid and enforceable." *Mezzanatto*, 513 U.S. at 210. In *Mezzanatto*, the Supreme Court sanctioned the use of Rule 410 evidence for impeachment and during the government's rebuttal case. *See* WEINSTEIN'S FEDERAL EVIDENCE § 410.12 ("[I]f a defendant engaged in plea discussions signs a document providing that his or her statements may be used at trial to impeach or rebut contrary testimony, Rule 410 will not bar the statements."). The issue here is whether the reasoning of *Mezzanatto* should be extended to allow the government to use Rule 410 evidence in its case-in-chief.

Mitchell argues *Mezzanatto* should not be extended in his case, offering several reasons. First, he contends his guilty plea was not knowing and voluntary

and therefore the *Mezzanatto* waiver analysis should not apply.  Next, relying on a concurrence in *Mezzanatto*, which suggested case-in-chief waivers might not be covered by the reasoning applied to rebuttal waivers, Mitchell urges us not to extend the reasoning of *Mezzanatto* to his situation.

Generally, we review a district court's decision on the admissibility of evidence for an abuse of discretion.  *See United States v. Stiger*, 413 F.3d 1185, 1197 (10th Cir. 2005).  But in this case the question of whether to extend the rationale of *Mezzanatto* to case-in-chief waivers is a legal question, which we review de novo.  *See United States v. Sylvester*, 583 F.3d 285, 288 n.4 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1313 (2010) ("Whether Rule 410 is waivable with respect to the use of plea statements in the government's case-in-chief is a legal conclusion, reviewed de novo.").  After all, "[a] district court by definition abuses its discretion when it makes an error of law. . . .  The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Koon v. United States*, 518 U.S. 81, 100 (1996).

Our review of the voluntariness of a guilty plea is de novo.  *United States v. Hamilton*, 510 F.3d 1209, 1215–16 (10th Cir. 2007).  An objection not preserved below is reviewed for plain error.  *United States v. Ferrel*, 603 F.3d 758, 764 (10th Cir. 2010).

*A. Knowing and Voluntary Guilty Plea*

We first consider whether Mitchell's Rule 410 waiver was knowing and voluntary. It has long been established that a criminal defendant may waive many fundamental procedural and substantive rights, both constitutional and statutory. *See Mezzanatto*, 513 U.S. at 201 (collecting cases). For instance, a criminal defendant may waive constitutional rights such as the right to a jury trial, assistance of counsel, and against double jeopardy. *Id.*

And a waiver, especially in the form of a plea of guilty, must be knowing and voluntary. Because a guilty plea alone, without an associated plea agreement, waives three constitutional rights—"the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination"—"[i]t is beyond dispute that a guilty plea must be both knowing and voluntary." *Parke v. Raley*, 506 U.S. 20, 28–29 (1992); *cf. United States v. Burke*, No. 10-3030, at \*6–14 (10th Cir. Feb. 2, 2011) (surveying types of waivers). If a guilty plea is not knowing and voluntary, it is void, see *United States v. Gigley*, 213 F.3d 509, 516 (10th Cir. 2000), and any additional waivers in the plea agreement generally are unenforceable.

Mitchell claims on appeal, as he did below, that his guilty plea was not knowing and voluntary. He argues the district court erred in concluding to the contrary, pointing to evidence of a breakdown in the relationship with his trial counsel who negotiated the plea agreement. Mitchell also relies heavily on the

district court's statements that trial counsel may have exerted "undue influence" over Mitchell leading up to his entry of the guilty plea. In response, the government argues Mitchell never raised this issue before the district court and our review is therefore only for plain error.

We agree this issue was sufficiently raised below. The voluntariness of Mitchell's plea was specifically considered by the district court in its ruling on his motion to withdraw his guilty plea and the government's motion in limine. In Mitchell's motion to withdraw as well as his motion seeking reconsideration of the court's ruling on the motion in limine, his primary contention was his guilty plea was involuntary. The government itself raised the issue of the voluntary nature of the plea *in its motion in limine* by reminding the district court that it had already "found on three separate occasions—at the entry of the plea, and in both orders to withdraw the plea—that the plea (and consequently, the plea agreement) were knowingly and voluntarily entered into by the defendant." R., Vol. 1, p. 127. Additionally, the district court relied on the knowing and voluntary nature of Mitchell's plea in granting the motion in limine.

The question of whether Mitchell's plea was knowing and voluntary was raised before the district court on multiple occasions and was mentioned in the context of the admissibility of his plea statements by both the government and the district court. We see no reason to review for plain error, and therefore we

review de novo. In any event, for the reasons we discuss below, the district court did not commit any error, let alone plain error.

Based on a careful review of the record, we agree with the district court that Mitchell's plea was knowing and voluntary. The influence of his trial counsel did not render his plea involuntary. It is apparent counsel believed the government's offer was a good one, and like any competent lawyer assessing the pros and cons for her client, she gave Mitchell her most candid advice. The fact she used colorful language—"you would be a fool not to take this plea offer!!"—does not approach a constitutionally suspect level of coercion. A useful comparison is *United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996), in which the defendant claimed he was "hounded, browbeaten and yelled at" by his attorney. When he initially resisted these efforts at persuasion, his attorney told him he was "stupid" and "a f\*\*\*ing idiot." *Id.* We held even though "these pressures might have been palpable to Appellant, they do not vitiate the voluntariness of his plea; it was still his choice to make." *Id.* The pressure applied by Mitchell's trial counsel was markedly less than the attorney exercised in *Carr*, and we do not find counsel's influence overcame Mitchell's free will to voluntarily enter a guilty plea. Additionally, Mitchell affirmed the voluntariness of the plea numerous times under oath and before the court during the Rule 11 colloquy.

Mitchell argues the district court's factual finding that his trial counsel exerted "undue influence" cannot be reconciled with its ruling that his plea was voluntary and this finding requires a conclusion of involuntariness as a matter of law. We disagree. First, it is not evident the district court made a factual finding to which we owe deference. Next, the district court was aware of the implications of Mitchell's withdrawal of his guilty plea. It considered the influence exerted by counsel—as evident in her two letters—when the court balanced Mitchell's right to proceed to trial and his protestations of innocence against the need to enforce his guilty plea. More importantly, the district court explicitly reached the opposite conclusion—it allowed Mitchell to withdraw his guilty plea but still emphasized Mitchell's plea was knowing and voluntary. Trial counsel's influence may have been a factor in the court's decision, but that does not compel the conclusion Mitchell's guilty plea did not "represent[] a voluntary and intelligent choice among the alternatives open to the defendant." *Gigley*, 213 F.3d at 516.

The entirety of the record bears out the district court's conclusion. Mitchell admitted during his plea colloquy he was not coerced into pleading guilty and made the decision of his own free will. In light of these statements and the district court's findings of voluntariness, we conclude his plea was knowing and voluntary. The plea agreement therefore is enforceable.

*B.* *Rule 410 and* Mezzanatto

Having determined Mitchell voluntarily entered into the plea agreement, we consider whether his plea statements are admissible at trial.

As a general matter, evidence of a guilty plea or statements made in plea negotiations are inadmissible. Rule 410 provides:

> Except as otherwise provided in this rule, *evidence of the following is not, in any civil or criminal proceeding, admissible* against the defendant who made the plea or was a participant in the plea discussions: (1) a *plea of guilty* which was later withdrawn; . . . (4) *any statement made* in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

FED. R. EVID. 410 (emphasis added).

Rule 410 grew out of longstanding case law excluding this type of especially damning evidence. As far back as *Kercheval v. United States*, 274 U.S. 220 (1927), the Supreme Court has held withdrawn guilty pleas could not be entered into evidence in a subsequent trial for the same offense. Rejecting the common law argument that a withdrawn guilty plea was more or less a form of prior testimony, the Court reasoned a plea "shown to have been unfairly obtained or given through ignorance, fear or inadvertence" should not be admissible. *Id.* at 223–24. When a court allows a defendant to withdraw a guilty plea, it makes the implicit determination the plea should "be held for naught," and thus admitting the withdrawn plea into evidence would be "in direct conflict with that

determination." *Id.* at 224. The defendant's ability to withdraw a wrongfully obtained guilty plea was so paramount the Court found insufficient a jury charge to ignore the withdrawn plea if the jury found the plea was obtained through bribery or deceit. *See id.* "The withdrawal of a plea of guilty is a poor privilege, if, notwithstanding its withdrawal, it may be used in evidence under the plea of not guilty." *Id.*

With this strong bias toward exclusion, the question remained whether Rule 410's protections could nonetheless be waived. The Supreme Court expressly considered this question in 1995 in *Mezzanatto*. In that case, the Court examined a Rule 410 waiver allowing the government to use the defendant's statements during plea negotiations to impeach any contradictory testimony that could arise if the case proceeded to trial. 513 U.S. at 198. The Court concluded "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." *Id.* at 210.

The Court noted there may be a small number of "evidentiary provisions that are so fundamental to the reliability of the factfinding process that they may never be waived without irreparably discrediting the federal courts." *Id.* at 204 (quotation omitted). These provisions are in accord with rights the Court has identified whose violation is a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself" and

-13-

therefore are within a "category of constitutional errors which are not subject to harmless error." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). "Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Rose v. Clark*, 478 U.S. 570, 577–78 (1986); *see, e.g.*, *Vasquez v. Hillery*, 474 U.S. 254, 263–64 (1986) (right to grand jury selection free of racial discrimination); *Waller v. Georgia*, 467 U.S. 39, 49 n.9 (1984) (right to a public trial); *McKaskle v. Wiggins*, 465 U.S. 168, 177–78 n.8 (1984) (right to self-representation at trial); *Gideon v. Wainwright*, 372 U.S. 335, 342–45 (1963) (right to trial counsel); *Tumey v. Ohio*, 273 U.S. 510, 535 (1927) (right to an impartial judge). But nothing in Rule 410 suggests Congress intended its protections to be unwaivable along the lines of these structural protections. *Mezzanatto*, 513 U.S. at 200–03.

To the contrary, the Court in *Mezzanatto* considered and rejected additional arguments that Rule 410 protections should be unwaivable: (a) Rule 410 is not the type of rule that must be enforced as a means of securing fair procedure, see *id.* at 204–06; (b) waivability would not undermine the goal of voluntary settlement, see *id.* at 206–09; and (c) waivability would not "invite prosecutorial overreaching and abuse," because the pressure to decide whether to waive the Rule 410 protections is no greater than other pressures confronting a defendant considering a guilty plea. *Id.* at 209–10.

Despite this reasoning, *Mezzanatto* generated a three-justice concurrence that advocated a more narrow scope of the holding and emphasized the case only dealt with an impeachment waiver. "It may be, however, that a waiver to use such statements in the case in chief would more severely undermine a defendant's incentive to negotiate, and thereby inhibit plea bargaining. As the Government has not sought such a waiver, we do not here explore this question." *Id.* at 211 (Ginsburg, J., concurring).[1]

Mitchell asks us to take the admonition of the *Mezzanatto* concurrence and dissent to heart and bar the admissibility of the plea statements in the government's case-in-chief. This we cannot do. We see no analytical distinction between Rule 410's application to impeachment waivers and case-in-chief

---

[1]   A dissent challenged the legal conclusion that a presumption of waivability should apply and predicted the consequences of this rule in criminal prosecutions. Because "defendants are generally in no position to challenge demands for these waivers," this meant "the use of waiver provisions as contracts of adhesion has become accepted practice." *Mezzanatto*, 513 U.S. at 216 (Souter, J., dissenting). And while recognizing *Mezzanatto* only involved an impeachment waiver, the dissent predicted it was unlikely the government would stop there:

> It is true that many (if not all) of the waiver forms now employed go only to admissibility for impeachment. But although the erosion of the Rules has begun with this trickle, the majority's reasoning will provide no principled limit to it. The Rules draw no distinction between use of a statement for impeachment and use in the Government's case in chief.

*Id.* at 217 (Souter, J., dissenting) (footnote omitted).

-15-

waivers.  The same reasoning for the former compels the latter.  Nor did Mitchell negotiate a narrower waiver in the first place.

Mitchell counters we should still limit the use of plea evidence to impeachment, making several procedural and substantive objections.  First, as a procedural distinction, a defendant generally opens the door when he challenges the factual basis of the government's case at trial.  His prior contradictory statements become fair game—a notion supporting other provisions of the Rules of Evidence.  For instance, once the door is open, the rules allow character evidence of the accused or the victim, or prior inconsistent statements of the defendant.  *See* FED. R. EVID. 404(a)(1)–(2) (if evidence regarding a particular character trait is first "offered by an accused," evidence of the same trait "offered by the prosecution" is admissible); 801(d)(1)(A) (allowing prior sworn statements only if they contradict the declarant's testimony at trial).  These rules explicitly distinguish between impeachment and the case-in-chief, and Mitchell contends a similar limitation should be read into Rule 410.  But the explicit nature of this distinction actually counsels against reading an implicit distinction into Rule 410—the rules committee and Congress knew how to make this distinction and chose not to do so in Rule 410.  The *Mezzanatto* majority recognized and rejected the same argument with respect to impeachment waivers.

Next, Mitchell argues case-in-chief waivers fail to promote the substantive purpose served by impeachment waivers: prevention of fraud upon the court.  He

reasons admitting previous plea statements or a guilty plea only after a defendant gives inconsistent testimony alerts the judge or jury to the defendant's inconsistency, thus furthering the truth-seeking process. Mitchell argues a case-in-chief waiver performs no such function and only relieves the government of its burden to prove guilt beyond a reasonable doubt. In so doing, a case-in-chief waiver does not aid the truth-seeking process and in some cases would undermine this objective for the truly innocent defendant.

We see little support for Mitchell's observation, either in case law or in practical effect. Even if the district court determines a guilty plea should be withdrawn, a waiver of Rule 410 only means a trial will contain *more* evidence—both the evidence of the original guilty plea *and* evidence the plea was withdrawn. As the Supreme Court observed in applying an impeachment waiver, when seeking the truth, more evidence is preferable to less. *Mezzanatto*, 513 U.S. at 204; *see* Note, *Contracts to Alter the Rules of Evidence*, 46 HARV. L. REV. 138, 140 (1932) ("If the effect of the agreement is to present to the court and jury additional facts, thus permitting a more accurate determination of the merits of the controversy, objection to [waiver agreements] seems unjustified.").

Nor do we see any evidence that a case-in-chief waiver will undermine the willingness of defendants to engage in plea bargaining. The same factors present here were at play for the rebuttal waiver in *Mezzanatto*, and the Supreme Court there rejected the notion it would impinge on the plea bargain process. *See* David

P. Leonard, WAIVER OF PROTECTIONS AGAINST THE USE OF PLEA BARGAINS AND PLEA BARGAINING STATEMENTS AFTER *MEZZANATTO*, 23 CRIM. JUST. 8, 27 (Fall 2008) ("In short, even in the face of *Mezzanatto*, there is much a defense attorney can do to protect the client's interests."). In any event, Congress is free to change or modify Rule 410 to bar such evidence at trial and in the fifteen years since *Mezzanatto* has not done so.

Were we to have any lingering concerns about the extension of *Mezzanatto* to case-in-chief waivers, we are reassured by the procedural posture of this case. Here, the waiver was executed at the *conclusion* of plea negotiations, when Mitchell actually entered a guilty plea. *Mezzanatto* analyzed a waiver entered as a pre-condition to negotiations and a situation where the defendant later failed to reach a plea agreement with the government. To us, the waiver in *Mezzanatto* was more burdensome than the waiver here since the defendant had no assurance the negotiations would bear fruit. *See* John Leubsdorf, *Evidence Law as a System of Incentives*, 95 IOWA L. REV. 1621, 1645–46 (2010) (discussing incentives in "allow[ing] the government to buy the right to use a defendant's statements made during plea bargaining."). In fact, Mitchell received a promise the government would recommend the low end of the guidelines range, while the defendant in *Mezzanatto* received nothing more than the *opportunity* to discuss cooperation with the government. *Cf. Sylvester*, 583 F.3d at 293 (approving Rule 410 case-in-chief waiver as a condition to plea negotiations). We therefore see little

chance the type of waiver at issue in this case would undermine the objective of encouraging plea negotiations, since the waiver was itself the *result* of plea negotiations.

Finally, it is worth noting that opening the door to this type of evidence may not be as great an expansion as Mitchell fears, for courts already broadly construe the meaning of "rebuttal" in Rule 410 waivers. *See Mezzanatto*, 513 U.S. at 217 n.2 (Souter, J., dissenting) (noting "[w]aiver for impeachment use, however, has been applied broadly" and discussing a case in which lines of questioning undertaken by defense counsel could open the door for impeachment evidence, even if the defendant himself did not testify); *Sylvester*, 583 F.3d at 292 ("[I]n other words, 'rebuttal' will sometimes mean the countering of factual assertions made during defense counsel's opening statement or cross-examination of government witnesses."); *United States v. Hardwick*, 544 F.3d 565, 571 (3d Cir. 2008) (allowing introduction of proffer statements in response to questioning "aimed at inferring that [someone other than the defendant was] responsible for the murders").

Our conclusion brings us in line with the other circuits that have considered and extended *Mezzanatto*'s reasoning to permit case-in-chief waivers of Rule 410's protections. *See Sylvester*, 583 F.3d at 289 ("Now presented with a case-in-chief waiver, however, we can find no convincing reason for not extending *Mezzanatto*'s rationale to this case."); *United States v. Burch*, 156 F.3d

1315, 1321 (D.C. Cir. 1998) ("Cumulatively, we believe [*Mezzanatto*'s] principles do not countenance drawing any distinction in this case between permitting waivers for purposes of impeachment or rebuttal and permitting waivers for the prosecution's case-in-chief."); *see also United States v. Young*, 223 F.3d 905, 910–11 (8th Cir. 2000) (finding defendant knowingly agreed to a blanket waiver of Rule 410 protections permitting use "in any prosecution or proceeding" and waiver enforceable in its broad form). We join these courts, agreeing that case-in-chief waivers will not undermine voluntary plea negotiations or compromise the fact-finding process at trial. *See Sylvester*, 583 F.3d at 291 (citing *Burch*, 156 F.3d at 1322–23).

In sum, the district court did not err in admitting evidence of Mitchell's plea waiver and statements from the plea negotiations.

### III.  CONCLUSION

For the foregoing reasons, we uphold Mitchell's conviction and thus AFFIRM.