FILED
United States Court of Appeals
Tenth Circuit

**February 2, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ANDRES GERARDO AYALA-
BOJORQUEZ,

    Defendant - Appellant.

No. 23-2054
(D.C. No. 2:21-CR-00890-MIS-1)
(D. N.M.)

_____

## ORDER AND JUDGMENT*
_____

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

_____

Andres Gerardo Ayala-Bojorquez appeals his conviction for illegal reentry.

His counsel has filed a motion to withdraw, together with a brief under *Anders v.*

*California*, 386 U.S. 738 (1967), based on counsel's assessment that any argument on

appeal would be frivolous.  We agree Ayala-Bojorquez has no non-frivolous

arguments, so we grant counsel's motion to withdraw and dismiss the appeal.

_____

*After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.      BACKGROUND & PROCEDURAL HISTORY

Ayala-Bojorquez is a Mexican citizen who has repeatedly entered the United States without permission.  Since 1999, he has been removed to Mexico eight times.  His two most recent unlawful entries are relevant here.

First, he was discovered in New Mexico in May 2016.  He was charged with illegal reentry and pleaded guilty.  He served a prison sentence and was removed to Mexico in August 2019.

Next, he was found in New Mexico in March 2021, and was again charged with illegal reentry.  He again decided to plead guilty.  He executed a written plea agreement in which he admitted his prior removal in August 2019, his Mexican citizenship, and his unauthorized reentry in March 2021.  His plea agreement also contained a prospective waiver of Federal Rule of Evidence 410, which normally prohibits introduction of, among other things, "a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea," Fed. R. Evid. 410(a)(4).

The Rule 410 waiver soon turned out to be important.  Before pleading guilty, Ayala-Bojorquez changed his mind and decided to go to trial.  The government then successfully moved *in limine* to introduce the portion of his plea agreement admitting the factual basis for his crime, and, at trial, the government indeed introduced those admissions against him.  The jury convicted and the district court imposed a 78-month prison sentence.  This appeal followed.

## II.     ANALYSIS

If, after conscientiously examining a case, defense counsel concludes any appeal would be frivolous, counsel may so advise the court and request permission to withdraw, but counsel must submit a brief highlighting any potentially appealable issues and provide a copy to the defendant. *Anders*, 386 U.S. at 744. The defendant may then submit a pro se brief. *Id.* If the court determines the appeal is frivolous upon careful review of the record, it may grant the request to withdraw and dismiss the appeal. *Id.* "On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the [defendant] the assistance of counsel to argue the appeal." *Id.*

Ayala-Bojorquez's counsel submitted the required brief, and Ayala-Bojorquez then submitted a letter offering four one-sentence arguments he hopes to make in this appeal. After reviewing these filings and independently reviewing the record, we conclude there are no available non-frivolous arguments, as explained below.

### A.     The 2016 Prosecution

Ayala-Bojorquez writes, "The judge should have not allowed my case from 2016 to be used in court." Letter dated Aug. 29, 2023 (filed Sept. 5, 2023).[1] We presume he means his 2016 illegal-reentry prosecution. The record shows the government was prepared to introduce certain documents from that prosecution, but it never actually introduced them. We therefore see no potentially meritorious issue.

---

[1] All further direct quotations of Ayala-Bojorquez's arguments are to this same one-page letter.

### B.    The Plea Agreement

Ayala-Bojorquez next argues, "The judge should have not allowed any other case that was a guilty plea." As far as we are aware, the only "other case" he could be referring to (*i.e.*, other than his 2016 prosecution) is this case, in which the judge allowed the jury to hear the admissions from the defunct plea agreement. We thus interpret this argument as a challenge to the judge's decision on that issue. Ayala-Bojorquez's counsel specifically raises this argument as one that is theoretically available, but, in counsel's opinion, would be frivolous. We ultimately agree there is no chance of success here, but for different reasons than those offered by counsel.

The Supreme Court has held that Rule 410 waivers are usually enforceable, at least for impeachment purposes. *United States v. Mezzanatto*, 513 U.S. 196, 204, 207, 210 (1995). In *Mezzanatto*, the government obtained such a waiver from the defendant as a condition of his cooperation, and, after the cooperation broke down, the government used what he had divulged to impeach him at trial. *Id.* at 198–99. The Supreme Court said the waiver was enforceable "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily." *Id.* at 210.

This court has extended *Mezzanatto* to allow admission of statements made in plea agreements during the government's case-in-chief. *United States v. Mitchell*, 633 F.3d 997, 1004 (10th Cir. 2011). The defendant in *Mitchell* waived his Rule 410 rights through a plea agreement, and he actually pleaded guilty, but later successfully

moved to withdraw the plea. *Id.* at 999. We held the government permissibly used his plea admissions against him as part of its case-in-chief at the ensuing trial. *Id.* at 1004.

Ayala-Bojorquez's counsel says these cases control here.[2] In *Mezzanatto* and *Mitchell*, however, the defendants entered into the agreement and went through with the actions contemplated in the agreement (cooperating with the government and pleading guilty, respectively). Ayala-Bojorquez, in contrast, entered into the agreement but he did not go through with the plea. This may be a distinction without a difference, but it is still a distinction, and one we have never addressed.

Rather than resolving the issue through an *Anders* proceeding like this one, we take a narrower approach here. Even assuming the district court should have excluded the admissions Ayala-Bojorquez made through his plea agreement, the error would be harmless.

> A nonconstitutional harmless error is one that does not have a substantial influence on the outcome of the trial; nor does it leave one in grave doubt as to whether it had such effect. Thus, where there is an abundance of evidence regarding the defendant's guilt, the nonconstitutional error will be deemed harmless.

*United States v. Solomon*, 399 F.3d 1231, 1238 (10th Cir. 2005) (internal quotation marks and citations omitted). In this case, the jury heard abundant evidence of Ayala-Bojorquez's guilt, aside from the admissions contained in his plea agreement.

---

[2] Counsel also cites *United States v. Jim*, 786 F.3d 802 (10th Cir. 2015), as controlling, but *Jim* is merely an example of upholding a Rule 410 waiver after concluding the defendant knowingly and voluntarily pleaded guilty. *See id.* at 805–13. *Jim* adds nothing to the holdings of *Mezzanatto* or *Mitchell*.

The crime of illegal reentry comprises four elements: (1) the defendant is a noncitizen (2) who has previously been removed from the United States (3) and thereafter intentionally reenters the United States (4) without permission from the U.S. government. *See* 8 U.S.C. § 1326(a); *United States v. Sierra-Ledesma*, 645 F.3d 1213, 1221–22 (10th Cir. 2011). In this regard, the jury heard testimony from:

- the border patrol officers who handled Ayala-Bojorquez's removal in August 2019, one of whom actually watched Ayala-Bojorquez walk back into Mexico;

- the border patrol officers who discovered Ayala-Bojorquez in the New Mexico desert in March 2021;

- the border patrol officer who interviewed Ayala-Bojorquez that day, and to whom Ayala-Bojorquez admitted—after waiving his *Miranda* rights—that he was a Mexican citizen and had recently reentered the United States without permission by climbing a border fence (essentially the same statement he made in his plea agreement);

- a fingerprint analysis expert who testified that Ayala-Bojorquez's fingerprints match those of the person who had been removed in August 2019; and

- a government records specialist who found nothing when he searched government databases for any record that Ayala-Bojorquez had requested lawful entry.

Ayala-Bojorquez's trial attorneys did not cross-examine some of these witnesses. For others, they brought up issues that have no relevance to the elements of the crime, as we explain below in Parts II.C (regarding Ayala-Bojorquez's border crossing card) and II.D (regarding his age when he was first removed). The only relevant cross-examination involved pointing out that agents had not video- or audio-recorded their encounters with Ayala-Bojorquez.

Finally, the government did not introduce the admissions from Ayala-Bojorquez's plea agreement until late in its case, and the jury was told that the admissions were part of a signed statement, not part of a plea agreement. In closing arguments, the government pointed to the signed statement only as a fallback position, should the jury have any doubt about the witnesses' testimony.

In short, the evidence against Ayala-Bojorquez was overwhelming, and the hypothetically erroneous admission of his statements in the plea agreement—the substance of which was already in evidence through other means—had no "substantial influence on the outcome of the trial," *Solomon*, 399 F.3d at 1238 (internal quotation marks omitted). In other words, any Rule 410 error would be harmless. We therefore see no potentially meritorious challenge on this account.

### C.    Ayala-Bojorquez's "Passport" or Border Crossing Card

Ayala-Bojorquez's next argument is, "I wasn't allowed to present a copy of my passport in [sic] which makes it legal for me to be in the United States." We have not found any dispute over Ayala-Bojorquez's passport in the record. At trial, however, two government witnesses testified they saw a copy of Ayala-Bojorquez's border crossing card in his official file (*i.e.*, his "A-file"). One witness remembered that the picture on the card was of a child, and the other witness said the picture was of a baby. No party sought to introduce the document itself. Ayala-Bojorquez's attorney, however, asked the jury to keep the border crossing card in mind while deliberating because, in the attorney's view, it was relevant to intent.

7

If "I wasn't allowed to present a copy of my passport" is a reference to this border crossing card, we see no potentially meritorious issue, for two reasons.

First, no one moved to put the border crossing card into evidence. Thus, Ayala-Bojorquez's only hope on appeal would be to show it was plainly erroneous for the district court not to *sua sponte* order that the card be put into evidence. *See, e.g.*, *United States v. Perez-Perez*, 992 F.3d 970, 974 (10th Cir. 2021) (stating that arguments not raised below are reviewed for plain error). We are confident there is no hope of a successful plain-error argument on this issue.

Second, contrary to Ayala-Bojorquez's attorney's argument to the jury, the existence of the border crossing card was not relevant to intent. His attorney's argument implied Ayala-Bojorquez thought he had permission to enter the country, thus cutting against any inference of intent to violate the law. However, the only intent the government must prove in an illegal-reentry prosecution is intent to enter the United States, as distinct from being brought here involuntarily. *See Sierra-Ledesma*, 645 F.3d at 1221–22. Intent to break the law is not necessary. *United States v. Hernandez-Hernandez*, 519 F.3d 1236, 1239–40 (10th Cir. 2008).

For these reasons, we see no basis to allow this appeal to proceed on the issue of the border crossing card. And if Ayala-Bojorquez genuinely meant to refer to a dispute over his passport (not the border crossing card), we see no potentially meritorious issue because the record contains nothing about his passport.

**D.　　Ayala-Bojorquez's Age at the Time of His First Removal**

Ayala-Bojorquez's final argument is, "I was not allowed to present my birth certificate because I was a minor." In context, it is clear he means the district court did not allow him to argue that his original removal (in 1999) had been invalid because he was supposedly a minor at the time of that removal and the government had not employed procedures specific to removing minors.

The district court did not completely disallow this argument. Rather, the district court held that Ayala-Bojorquez could pursue this argument only if he was prepared to "put on witnesses to talk about fundamental unfairness, showing [of] prejudice." R. vol. 3 at 242. The court appears to have been alluding to the last part of the statutory standard for collaterally attacking a removal order:

> In a criminal proceeding [for illegal reentry], an alien may not challenge the validity of the [underlying] deportation order . . . unless [he] demonstrates that—
>
> (1) [he] exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). Ayala-Bojorquez did not put on a defense case about this or any other issue.

His appellate counsel identifies the allegedly invalid original removal order as a potential, but ultimately frivolous, argument. Counsel says the validity of the

9

original order is irrelevant in light of the admissions from the plea agreement that were introduced into evidence.

As before, we prefer not to rely on the plea agreement in these circumstances. And, as before, there is a reason, apart from the plea agreement, to conclude there is no potentially meritorious issue here—specifically, Ayala-Bojorquez did not attempt to satisfy the § 1326(d) requirements. Thus, we see no basis to allow this appeal to proceed on this issue.

### E.    The 78-Month Sentence

Counsel (although not Ayala-Bojorquez himself) suggests one more issue that theoretically could be presented on appeal, regarding Ayala-Bojorquez's sentence. His sentencing guidelines calculation showed a total offense level of 20 and a criminal history category of V, for an advisory range of 63–78 months. Ayala-Bojorquez did not dispute the calculation, but he moved for a downward variance, arguing that the calculation overrepresented his criminal history because most of his prior criminal offenses were non-violent immigration violations. He suggested a range of 30–37 months (corresponding to offense level 17 and criminal history category III) would satisfy the 18 U.S.C. § 3553(a) factors. The district court disagreed and imposed a 78-month sentence—the high end of the guidelines calculation—because the court believed the most important factor under the circumstances was deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). Specifically, the court noted Ayala-Bojorquez had nine prior convictions, including a 2010 conviction

for which he received a 70-month sentence. Thus, the court concluded that a 78-month sentence was the best option to deter further criminal conduct.

Appellate counsel notes that Ayala-Bojorquez could try to challenge the district court's denial of his motion for a variance, but counsel believes the challenge would be frivolous. We agree. "This court reviews a district court's decision to grant or deny a request for variance under a deferential abuse of discretion standard." *United States v. Beltran*, 571 F.3d 1013, 1018 (10th Cir. 2009). The district court provided a cogent and reasonable explanation for its decision. We see no colorable claim that it abused its discretion.

## III.    CONCLUSION

We grant counsel's motion to withdraw and dismiss this appeal as frivolous.

Entered for the Court

Gregory A. Phillips
Circuit Judge