**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

 Plaintiff - Appellee,

v.

SEVGI Q. MUHAMMAD,

 Defendant - Appellant.

No. 13-5040

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 4:12-CR-00162-GKF-1)**

---

Fred Randolph Lynn, Tulsa, Oklahoma, for Defendant – Appellant.

Leena Alam, Assistant United States Attorney, (Danny C. Williams, Sr., United States Attorney, and Dennis A. Fries, Assistant United States Attorney, on the brief), Tulsa, Oklahoma, for Plaintiff – Appellee.

---

Before **HARTZ**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Defendant Sevgi Muhammad was indicted in the United States District Court for

the Northern District of Oklahoma on 24 counts of mail fraud under 18 U.S.C. § 1341,

two counts of making a false statement under 18 U.S.C. § 1001(a)(2), and one count of stealing public money under 18 U.S.C. § 641. All the charges arose out of Defendant's obtaining housing assistance through the Housing Choice Voucher Program of the United States Department of Housing and Urban Development (HUD). She pleaded no contest to one count of making a false statement. At the outset of her sentencing hearing, however, she moved to withdraw her plea. The district court later held an evidentiary hearing, denied the motion, and sentenced Defendant to serve three years of probation and pay $1,698 in restitution.

On appeal Defendant argues that her plea was not knowing and voluntary and that the district court erred when it denied her motion to withdraw the plea. She argues that her plea was not valid because she did not know (1) that a no-contest plea would have the same "attendant consequences" as a finding of guilt, Aplt. Br. at 9; (2) that the plea would result in a felony conviction and a finding of guilt; (3) that the conviction would make it difficult to obtain credit, employment, federal financial aid, and Section 8 housing; and (4) that the conviction would preclude her from firearm ownership and render her testimony in court suspect. But the law does not require a defendant to be informed of the collateral consequences of a plea, and the district court properly found that she knew that her plea would lead to a finding of guilt of the offense charged. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A.  Indictment

2

Defendant came to the United States from Turkey, and has a son who was born here. According to the indictment, from May 2004 to August 2009 Defendant received HUD rent subsidies based on her false statements in a written application and recertification forms that she was not receiving any income from any source. The indictment stated that she improperly received $8,351 in subsidies.

## B.    Plea Bargain

As trial was set to begin on November 19, 2012, Defendant's attorney informed the district court that she "[was] indicating that she [did] not wish to go to trial and wishe[d] to accept the government's offer." R., Vol. 2 at 11. After giving counsel time to prepare, the court conducted the plea proceeding, complying fully with Fed. R. Crim. P. 11(b). Defendant pleaded no contest to one count of making a false statement. The plea petition was on a printed form for pleas of guilty. In handwriting, "guilty" was crossed out in several places and replaced by "no contest," and the form's blank lines were filled in with the description of the plea agreement. *Id.*, Vol. 1 at 55–59. Among the handwritten portions was the statement that "upon acceptance of plea & finding of guilt," the government would "not object to a probated sentence" and would "dismiss all other counts." *Id.* at 56.

During the plea colloquy Defendant responded that she could read, write, and understand English "[a] little," *id.*, Vol. 2 at 20, and two Turkish interpreters were present. She said that it had been her intent to go to trial, but that morning she had decided to enter a plea to one count. She further said that she understood the rights she

3

was waiving, including that "if [she] decided not to take the witness stand, no inference of guilt could be drawn from [her] decision," and that if she chose to have a jury trial she "could not be convicted unless all 12 members of the jury agreed that [her] guilt of the essential elements of the crime had been proven by beyond a reasonable doubt." *Id.* at 22–23.

Also during the plea colloquy, the district court verified that Defendant was familiar with the indictment and her plea petition:

> The Court: Have you received a copy of the indictment pending against you?
> The Defendant: Yes.
> The Court: Have you read it or had it read to you in Turkish?
> The Defendant: Yes.
> The Court: Do you understand the nature of the charge to which you are pleading no contest?
> The Defendant: Yes.
> The Court: And it is a rather long indictment. Have you had it read to you in its entirety?
> The Defendant: Yes.
>
> . . . .
>
> The Court: Mr. Widell [defense counsel], given the expedited nature here of the plea, have we had time to have the entire petition read to [Defendant]?
> [Defense Counsel]: We have, Your Honor.
> The Court: Very well. [Defendant], has the petition been read to you in Turkish?
> The Defendant: Yes.
> The Court: Are all of the statements contained in that petition true, correct and complete?
> The Defendant: Yes.

*Id.* at 24, 30–31. Defendant expressed her understanding that she could be sentenced to serve up to five years in prison and pay a fine of up to $250,000. And she stated that she

4

was not relying on any promise besides the government's promise not to oppose probation and to dismiss the other charges. Further, she responded affirmatively that she "had enough time to fully confer" with her counsel, that she had "fully conferred with him about any defenses and any information available to" her, and that she was completely satisfied with his services. *Id.* at 21.

The district court accepted the plea and concluded, "Based upon [Defendant's] plea of no contest, this court finds her guilty as charged . . . ." *Id.* at 33. It set sentencing for March 5. On that date defense counsel orally moved to withdraw her plea on the ground "that it wasn't knowingly made," *id.* at 38, because she did not understand that upon entering a no-contest plea she would be found guilty. The court allowed defense counsel to withdraw from the case and said that a hearing would be scheduled later.

## C.      Evidentiary Hearing

Defendant, represented by new counsel, filed a motion to withdraw her plea on March 22, 2013. The evidentiary hearing was held on April 2. At the hearing Defendant testified that when she pleaded no contest she did not know that the plea would result in a felony conviction. She asserted that her attorney did not explain her punishment and simply said, "Just say 'no contest' and trust me." *Id.* at 55 (internal quotation marks omitted). But she was unwilling to assert under oath that the plea petition had not been read to her in full. When first questioned about the matter on cross-examination by the prosecutor, she responded as follows:

    Q:    Did your interpreters go over the plea petition with you?

A: They read me part of it.
Q: You had told the court that you had gone over the entire plea petition, that you had read it, and understood the entire petition. Now—
A: That's right.
Q: Now you're telling us that you only went over part of it?
A: I would—
THE INTERPRETER: I'm sorry?
A: Whatever I understood, I'd like to talk about it now.
Q: You had the opportunity to talk about it then, did you not?
A: No. Everyone was rushing that day.

. . . .

Q: At the time you told the court that you had read the entire plea petition and you understood it?
A: Whatever I understood, I said yes to it.
Q: Did you tell the court at the change-of-plea hearing that you had gone over the entire plea petition and that you understood it?
A: Whatever my interpreters told me I said yes. Just my interpreters told me whatever my attorney told them. Ask my interpreter to find out what she told me.
Q: Ma'am, my question to you is—has nothing to do with the no contest right now, it has to do with the plea petition.
A: I don't speak English that well; somebody has to guide me.

*Id.* at 66–67. Later the matter arose again:

Q: You told the court that you had gone over the petition with your attorney, the entire petition. Do you remember doing that?
A: I didn't read anything. I just understood whatever the interpreters have told me.
Q: You told the court that you did go over everything, that you had read and understood everything.
A: Whatever that was that they told me, I listened to it. If they didn't read me everything, they didn't read it to me. You can ask my interpreter.
Q: So now you're saying your interpreters failed to read you everything even though they took an oath that they would?

6

A:    I don't believe that they were wrong—wrongdoing of anything. They just followed my attorney. Whatever my attorney told them they told me.

*Id.* at 75–76.

The testimony of Defendant's original attorney, William Widell, did not help her. He said the following: On the day of trial he first wanted to see whether the district court would grant a motion in limine to exclude evidence of Defendant's previous foreign conviction. If the motion was granted, he was prepared to go to trial; but if it was denied, he had advised Defendant to enter a conditional plea, allowing her to appeal the ruling. On the morning set for trial, however, she told him that she did not want a trial and did not want to wait until a ruling on the motion in limine. The interpreters were present for this conversation between counsel and client. Defendant was originally going to enter a guilty plea, but Mr. Widell thought she was "unlikely to admit that she had done something wrong," so he suggested that she enter a no-contest plea instead. *Id.* at 117. He explained to her that "[a] no contest plea is the same thing as a guilty plea, except you don't have to say that you did anything wrong." *Id.* at 120. He told her there would be a finding of guilt, but he was not sure if he explained in any other way that a no-contest plea and a guilty plea would have the same consequences. *See id.* at 120–21. He and Defendant "sat down with the interpreters and we went through [the plea petition] line by line." *Id.* at 125. When they went over the section that referenced a finding of guilt, he told her that the court would find her guilty.

7

One of the interpreters at the plea hearing also testified at the hearing on the motion to withdraw Defendant's plea. Her testimony on direct examination by defense counsel supported Defendant's position. She said:

> [Interpreter]: Me and the other interpreter were left alone with the defendant and we were told to read the plea petition to her, and it was a few pages, I can't remember how many pages, and we didn't understand some parts of it. I definitely didn't understand what 'no contest' was. And we had to mark the questions and ask them when he came back in the courtroom or came back near us. But at no point she was not told that this would be found guilty. She was just told that she would not have to stand before the judge and admit to guilt.
>
> . . . .
>
> [Defense Counsel]: To be clear, are you saying that Mr. Widell did not read and explain the plea petition to [Defendant]?
> [Interpreter]: That's right.

R., Vol. 2 at 162–63.

On cross examination, however, the interpreter clarified that the only shortcoming in translating the entire petition to which she could attest was that the interpreters did not understand some of the language:

> [Prosecutor]: You had indicated that you were left alone, you and the other interpreter, to interpret the plea petition for the defendant; is that correct?
> [Interpreter]: Yes, sir.
> [Prosecutor]: Did you do that?
> [Interpreter]: We tried our best.
>
> . . . .

8

| [Prosecutor]: | When you say you tried your best, what do you mean by that? |
|---|---|
| [Interpreter]: | The legal wording can be very confusing for everyone and there were many sentences we didn't understand, but her main question was would she be deported, would she lose her son, would she go to prison, and how much she would have to pay, so her main questions were those. She kept repeating them. And every time Mr. Widell was, you know, within reach, we asked him. |

*Id.* at 164. The prosecutor further elicited that the witness was an experienced interpreter, having worked in state and federal courts, and that she never indicated to the district court that she did not understand the meaning of a term in the petition or used during the plea colloquy. The witness then said that she did not "remember one way or the other" whether defense counsel went over the handwritten portions of the petition with Defendant and could not "doubt or not doubt" whether Mr. Widell was correct when he said that he had. *Id.* at 169. The cross-examination concluded with her testimony that she had "interpreted correctly to the court when [Defendant] told the court that she had gone over the entire plea petition," *id.* at 171, and that the other interpreter "may well have gone over" with Defendant the portions of the petition that the witness had not gone over, *id.* at 172. On redirect, defense counsel elicited that the witness did not understand that the "no-contest plea would result in a finding of guilt to a felony." *Id.* at 173. But there was no evidence that any other specific language had been difficult to translate.

At the hearing the government also presented evidence that Defendant understood English better than she had indicated. Her 2003 asylum petition stated that she was fluent in English, although she testified that she had just copied from a document filled out for

9

her by her attorney and that she did not know what the word "fluent" meant. Also, an application for food stamps indicated she spoke English, but Defendant claimed that form had been filled out by a friend. Finally, the probation officer who worked with Defendant to prepare her presentence report testified that he spoke to her entirely in English, that she seemed to understand what he was saying, and that she "follow[ed] the directions and answer[ed] his questions appropriately." *Id.* at 88.

The district court denied Defendant's motion to withdraw her plea, stating:

> The primary issue here is whether the plea was knowing and voluntary, and the contention made by the defendant here is that she did not know that by entering a plea of no contest that she would be found guilty. That is contrary to the statement contained on page 2 of the written petition wherein the petition states that the government will dismiss all other counts upon acceptance of plea and finding of guilt. There is no contention here that the plea petition was not read to the defendant by the interpreters. It does not appear, if the recollection of [the interpreter] is correct, that any questions were put to Mr. Widell about a finding of guilt, but it's clear that the petition itself states that upon her plea of no contest, and the court's acceptance of that plea, that there will be a finding of guilt.

*Id.* at 185. The court also found persuasive that Defendant clearly understood the potential sentence she could receive under the plea, which implied that she understood that there would be a finding of guilt. *See id.* at 185–87.

## II.  DISCUSSION

### A.  Whether Defendant's Plea Was Knowing and Voluntary

"To be valid, a guilty plea must represent a voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. Dunbar*, 718

F.3d 1268, 1279 (10th Cir. 2013) (brackets and internal quotation marks omitted). As the

Supreme Court has declared:

> A plea of guilty entered by one *fully aware of the direct consequences*, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes.).

*Brady v. United States*, 397 U.S. 742, 755 (1970) (emphasis added) (internal quotation

marks omitted). "By using the word 'direct,' the Court excluded collateral

consequences." *United States v. Krejcarek*, 453 F.3d 1290, 1297 (10th Cir. 2006).

"[T]here is no requirement that a defendant be advised of all potential collateral

consequences of a guilty plea in order for that plea to be voluntary, knowing, and

intelligent." *Id.* at 1296. "Consequences of a guilty plea unrelated to the length and

nature of the federal sentence are not direct consequences." *United States v. Hurlich*, 293

F.3d 1223, 1231 (10th Cir. 2002).

The validity of the plea "is generally a question of law subject to de novo review."

*United States v. Vidal*, 561 F.3d 1113, 1118 (10th Cir. 2009). But resolution of the legal

issue may depend on fact finding. And we review the district court's findings of

historical fact for clear error. *See United States v. Soto*, 660 F.3d 1264, 1268 (10th Cir.

2011) (contention that plea was invalid was based on assertion that district court found to

be untrue). Accordingly, we review the factual record in the light most favorable to the

11

district court's ruling.  *See United States v. Cruz*, 58 F.3d 550, 553 & n.3 (10th Cir. 1995).

Turning to Defendant's challenge to her plea, we first address her undisputed claim that she was not informed that as a result of her plea, she would have a felony conviction, she would have difficulty in obtaining credit, securing employment, obtaining Section 8 housing and federal financial aid, and that her conviction would preclude her from owning a firearm and would subject her future testimony to impeachment.  In our view, these consequences of her plea are collateral consequences that she need not know to enter a valid plea.  Defendant cites no case where a court found that knowledge of any of these consequences was necessary for a plea to be knowing.  And courts have ruled that defendants do not need to be aware of collateral consequences similar or identical to several of those she names.  *See United States v. Nicholson*, 676 F.3d 376, 382 (4th Cir. 2012) (loss of federal benefits); *Kratt v. Garvey*, 342 F.3d 475, 485 (6th Cir. 2003) (revocation of pilot's license); *United States v. Campusano*, 947 F.2d 1, 4–5 (1st Cir. 1991) (use in evidence in federal trial of defendant's guilty plea in state prosecution); *United States v. Crowley*, 529 F.2d 1066, 1072 (3rd Cir. 1976) (defendant would lose civil-service job and conviction was for a felony); *see also United States v. Youngs*, 687 F.3d 56, 61(2nd Cir. 2012) (possibility of civil commitment after serving criminal sentence is collateral consequence); *Steele v. Murphy*, 365 F.3d 14, 18 (1st Cir. 2004) (possible life commitment as a sexually dangerous person is collateral consequence).

Defendant next argues that her plea was not knowing and voluntary because she did not understand that it would result in a finding of guilt and because she did not understand the difference between a plea of no contest and a plea of guilty. But her attorney testified that he told her that "a no-contest plea is the same thing as a guilty plea, except you don't have to say that you did anything wrong." R., Vol. 2 at 120. And the plea petition itself states that if she pleads no contest, "the Court may impose the same punishment as if I had pleaded 'NOT GUILTY,' stood trial, and been convicted by a jury," and that the government would dismiss the other charges against her "upon acceptance of plea & finding of guilt." R., Vol. 1 at 56.[1] Morever, upon accepting her plea, the district court announced, "Based upon [Defendant's] plea of no contest, this

---

[1] The district court may have overstated the point by saying that there was "no contention here that the plea petition was not read to the defendant by the interpreters," R., Vol. 2 at 185, because defense counsel did contend that not all of the petition was read to Defendant. But there was no *evidence* (not even Defendant's own testimony) to support that contention, and the only issue raised by Defendant regarding the accuracy of the translation was the interpreter's assertion that she did not know the meaning of "no contest." Of course, it would be a gross dereliction of duty for an interpreter not to insist on clarification of the meaning of a term that was to be translated. *See* Admin. Office of the U.S. Courts*, Standards for Performance and Professional Responsibility for Contract Court Interpreters in the Federal Courts,* Federal Court Interpreters on U.S. Courts, ¶¶ 1 ("Accuracy and Completeness"), 8 ("Assessing and Reporting Impediments to Performance"), http://www.uscourts.gov/ uscourts/FederalCourts/Interpreter/ Standards_for_Performance.pdf (last visited Mar. 25, 2014); Admin. Office of the U.S. Courts, *Federal Court Interpreter Orientation Manual and Glossary*, Federal Court Interpreters on U.S. Courts, Ch. 3 § IV ("Accuracy of Performance"), http://www.uscourts.gov/uscourts/FederalCourts/Interpreter/federal-court-interpreter-orientation-manual.pdf (last revised Jan. 14, 2014).

court finds her guilty as charged . . . ," *id.*, Vol. 2 at 33, yet there was no objection to this finding of guilt.

Construing the evidence in the light most favorable to the decision below, we conclude that Defendant's plea of no contest was knowing and voluntary.

### B. Refusal to Allow Withdrawal of Plea

Defendant also challenges the district court's denial of her motion to withdraw her plea. A defendant is allowed to withdraw her plea before sentencing if she "'can show a fair and just reason for requesting the withdrawal.'" *United States v. Garcia*, 577 F.3d 1271, 1273 (10th Cir. 2009) (quoting Fed. R. Crim. P. 11(d)(2)(B)). To determine whether there is a fair and just reason, the court examines seven factors: "(1) whether the defendant has asserted [her] innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources." *Id.* at 1273–74 (internal quotation marks omitted). We review for abuse of discretion, and "[a]lthough a motion to withdraw a plea prior to sentencing should be freely allowed, we will not reverse a district court's decision unless the defendant can show that the court acted unjustly or unfairly." *Id.* at 1274 (internal quotation marks omitted).

The district court considered the seven relevant factors and ruled that (1) all but the first weighed against Defendant and (2) the favorable weight of the first—assertion of innocence—was attenuated because her prior no-contest plea itself essentially claimed

14

innocence.  Defendant's brief on appeal argues that all the factors weighed in her favor. But her district-court brief, although citing the seven factors, discussed only whether her plea was knowing and voluntary.  By not raising arguments on the other factors in district court, Defendant waived them and we need not consider them further.  *See United States v. Moland*, 996 F.2d 259, 261 (10th Cir. 1993) ("We will not consider issues which are raised for the first time on appeal unless a party demonstrates an impediment which prevented raising the argument below." (internal quotation marks omitted)).

We see no abuse of discretion in the district court's ruling.  There was no "fair and just reason" for permitting withdrawal.  Fed. R. Crim. P. 11(d)(2)(B); *see Garcia*, 577 F.3d at 1274–75.

## III.    CONCLUSION

We AFFIRM Defendant's conviction and sentence.