FILED
United States Court of Appeals
Tenth Circuit

May 12, 2015

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee/Cross-
      Appellant,

v.

DERRICK IVAN JIM,

      Defendant - Appellant/Cross-
      Appellee.

Nos. 12-2085 & 12-2120

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:10-CR-02653-JB-1)**
_____

John T. Carlson, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with him on the briefs), Denver, Colorado for Defendant Derrick Jim.

Mark T. Baker, Assistant United States Attorney (Kenneth J. Gonzales, United States Attorney, with him on the briefs), Albuquerque, New Mexico for Plaintiff United States of America.

_____

Before **BRISCOE,** Chief Judge, **EBEL,** and **KELLY,** Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

A jury convicted Derrick Jim of aggravated sexual abuse occurring in the Navajo Nation. Jim initially pled guilty to this offense, but later withdrew his plea and proceeded to trial. On appeal, Jim claims that the trial court erred when it let the Government present to the jury evidence of the admissions he made in his plea agreement and during his plea colloquy. Ordinarily, Rule 410 of the Federal Rules of Evidence precludes the Government from using such evidence against a defendant. But Jim waived his Rule 410 protections as part of the plea agreement underlying his (now withdrawn) guilty plea. We conclude that the district court did not err in enforcing Jim's Rule 410 waiver by allowing the Government to present to the jury Jim's prior admissions of guilt. We, therefore, AFFIRM Jim's convictions.

In its cross-appeal, the United States challenges Jim's 360-month prison sentence, arguing that the district court erred in calculating Jim's offense level under the sentencing guidelines. We agree that the district court erred when it held that, in determining whether a two-offense-level enhancement under U.S.S.G. § 2A3.1(b)(4)(B) for causing the victim serious bodily injury applied in Jim's case, the court could not consider any injuries directly resulting from the sexual abuse for which Jim was convicted. Thus, we remand for resentencing so the district court can determine, in the first instance, whether that enhancement under § 2A3.1(b)(4)(B) is warranted in this case and, if so, the impact of that enhancement on Jim's sentence.

Therefore, exercising jurisdiction under 18 U.S.C. § 3742(a) and (b), and 28 U.S.C. § 1291, we AFFIRM Jim's convictions, but REMAND for resentencing.

## BACKGROUND

The evidence, viewed in the light most favorable to the jury's verdict,[1] established the following: On August 12, 2010, K.T. had a get-together with a few friends at her home located in the Navajo Nation. One of K.T.'s friends invited Jim. During the evening, those at the get-together drank alcohol and socialized under K.T.'s carport and in her driveway.

After 1:00 a.m., K.T., feeling ill from drinking too much, went inside the house and laid down on a couch in her living room. Jim followed her inside; locked the door to the carport and turned off the interior lights; pulled K.T. off the couch, causing her to hit her head on the floor; dragged her by her ankles down the hallway and into her bedroom; and, while K.T. fought him, raped her vaginally and anally with his penis. Afterwards, Jim dragged K.T. into the laundry room, where she was able to fight him off. He then fled from the house through the exterior laundry room door.

While all of this was occurring, K.T.'s friends, upon discovering that K.T.'s house was locked and dark, knocked on the door leading from the carport to the kitchen, rang the doorbell, and called K.T.'s cell phone, to no avail. After Jim fled, K.T. crawled to the carport door, where her friends were knocking, and opened the door. She was naked

---

[1] See United States v. Berry, 717 F.3d 823, 827 (10th Cir.), cert. denied, 134 S. Ct. 495 (2013).

from the waist down, bleeding, and crying hysterically. When she was eventually able to speak, K.T. told her friends that Jim had raped her.

As a result of these events, the United States charged Jim with one count of aggravated sexual abuse—vaginal intercourse by force, in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(A). Jim initially pled guilty to that charge, but the district court later granted Jim's request to withdraw his guilty plea and proceed to trial. The Government then added a second charge: aggravated sexual abuse—anal penetration by force. A jury convicted Jim of both charges, and the district court imposed concurrent 360-month sentences.[2]

On appeal, Jim challenges his convictions, arguing that the district court erred when, contrary to Rule 410, it allowed the Government to present to the jury evidence that he admitted committing the charged offenses when he initially pled guilty. We reject this argument because Jim validly waived the usual protection Rule 410 provides against the Government's use of this evidence at trial. In a cross-appeal, the Government contends that the district court erred in calculating Jim's offense level under the

---

[2] These crimes are federal offenses because the United States charged that an "Indian" committed these crimes against another "Indian" in "Indian country," as defined in 18 U.S.C. § 1151(a). See 18 U.S.C. §§ 1152, 1153(a); see also United States v. Antelope, 430 U.S. 641, 642-43 & 644 n.4 (1977). Federal law would not have applied if a non-Indian had committed these offenses in "Indian country" against a non-Indian. See Antelope, 430 U.S. at 643 n.2, 644 & n.4. Jim argues that this differing treatment of Indians and non-Indians amounts to an impermissible classification based on race. Because the Supreme Court has already rejected Jim's argument, see id. at 645-47, we deny relief. Jim acknowledges the existing Supreme Court precedent and raises the issue only to preserve it should the Supreme Court revisit the question in the future.

sentencing guidelines.  We agree, and remand for resentencing.


## DISCUSSION

### I.  Jim's challenge to the enforcement of his Rule 410 waiver

Rule 410 provides that evidence of "a guilty plea that was later withdrawn" or statements that a defendant made when he entered a guilty plea, later withdrawn, are not admissible against that defendant.  Fed. R. Evid. 410(a)(1), (3)[3]; see United States v. Mitchell, 633 F.3d 997, 998, 1000, 1002-03 (10th Cir. 2011).  But a defendant can waive his Rule 410 protections.  See United States v. Mezzanatto, 513 U.S. 196, 197 (1995).

---

[3] Rule 410(a) provides:

> In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
>
> > (1) a guilty plea that was later withdrawn;
> >
> > (2) a nolo contendere plea;
> >
> > (3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or
> >
> > (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

See also Fed. R. Crim. P. 11(f) ("The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410.").

In this case, Jim waived those protections as part of his initial plea agreement:

> Except under circumstances where the Court, acting on its own, fails to accept this plea agreement, the Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) [providing that an opposing party's statement is not hearsay] in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement.

(R. v.1 at 30, ¶ 10(c).)  In light of Jim's Rule 410 waiver, the district court allowed the Government to introduce evidence during his trial of the admissions Jim made in his plea agreement and during his plea colloquy.  United States v. Jim, 839 F. Supp. 2d 1157, 1158 (D. N.M. 2012).

On appeal, Jim does not contend that he unknowingly or involuntarily waived Rule 410's protections.  Instead, he claims that his Rule 410 waiver was unenforceable because it was part of an overall plea agreement that was itself not knowing and voluntary.  More specifically, Jim contends that his guilty plea, which was part of his plea agreement, was not knowing and voluntary because he did not realize that, by pleading guilty, he was foregoing a trial.  "If a guilty plea is not knowing and voluntary, it is void, and any additional waivers in the plea agreement generally are unenforceable."  Mitchell, 633 F.3d at 1001 (citation omitted); see also United States v. Rollings, 751 F.3d 1183, 1186 (10th Cir.), cert. denied, 135 S. Ct. 494 (2014).  To determine whether Jim's Rule 410 waiver is enforceable in this case, therefore, we consider whether Jim knowingly and

6

voluntarily entered his plea agreement and guilty plea, which guilty plea the district court later allowed him to withdraw. Because Jim failed to show that his guilty plea and the underlying plea agreement were unknowing or involuntary, we conclude that the Rule 410 waiver contained in the plea agreement was enforceable. Based on that waiver, the district court did not err in allowing the Government to present to the jury evidence of the admissions Jim made in the plea agreement and during the plea colloquy.

### A. Proceedings relevant to the enforcement of Jim's Rule 410 waiver

In order to understand Jim's argument against enforcement of his Rule 410 waiver and why that argument fails, it is necessary to consider four discrete proceedings that occurred during this criminal prosecution.

### 1. Jim pled guilty

Pursuant to the plea agreement, Jim pled guilty to one count of aggravated sexual abuse, and the parties agreed that Jim would receive a sentence of between 151 and 188 months in prison. If the district court accepted the plea agreement, the parties' agreed-upon sentencing range would bind the court. See Fed. R. Crim. P. 11(c)(1)(C). In light of that, the magistrate judge who took Jim's guilty plea accepted his guilty plea, after determining Jim entered it knowingly and voluntarily, but deferred deciding whether to accept the plea agreement until sentencing. See Fed. R. Crim. P. 11(c)(3)(A); see also United States v. Byrum, 567 F.3d 1255, 1259 (10th Cir. 2009).

### 2. Jim retained new counsel

After he pled guilty but before sentencing, Jim, acting on his own, wrote the

7

district court asking for a new court-appointed attorney. During an ex parte hearing to address that request, Jim told the district court that his current attorney had rushed him into the plea agreement, which Jim had not fully understood. In particular, Jim told the court that he had not realized that, by pleading guilty, he would not have a trial. According to Jim, when he pled guilty, he mistakenly believed that his plea agreement only limited the length of the sentence he would receive, should he be convicted, but that he would still have a jury trial to determine his guilt or innocence. (This was the only time that Jim made this assertion to the district court, although the district court thereafter did sua sponte return to this issue in several later rulings.) Before the court ruled on Jim's request for another court-appointed attorney, Jim instead retained a new lawyer.

### 3. The district court allowed Jim to withdraw his guilty plea

Jim's new attorney filed a motion to withdraw Jim's guilty plea. Because Jim made this request before sentencing, the district court had discretion to permit Jim to withdraw his plea if he asserted a "fair and just reason for requesting" to do so. Fed. R. Crim. P. 11(d)(2)(B); see also United States v. Sanchez-Leon, 764 F.3d 1248, 1259 (10th Cir. 2014) (noting such a motion is freely allowed). Although Jim gave the district court several reasons why he was asking to withdraw his guilty plea (e.g., the defense had new evidence with which to impeach the victim and, without further explanation, Jim's guilty plea "was without full understanding and arguably it was not voluntary," (R. v.1 at 50, ¶ 11)), Jim did not specifically reassert his mistaken belief that, even after his guilty plea, he would still have a jury trial.

8

The district court, in deciding whether to permit Jim to withdraw his guilty plea, considered several factors, including whether Jim's guilty plea was knowing and voluntary.[4] See Sanchez-Leon, 764 F.3d at 1258. In addressing the knowing-and-voluntary factor, the district court sua sponte noted that it remained troubled by Jim's earlier pro se assertion, made when he asked for a new attorney, that Jim had not realized that by pleading guilty he was giving up a trial. Adding to the district court's concern was the fact that, when the magistrate judge took Jim's guilty plea, the magistrate judge had not specifically informed Jim, as required by Fed. R. Crim. P. 11(b)(1)(C) and (F), that, by pleading guilty, he was waiving his right to a trial. Despite the district court's concerns, however, the court ultimately did not decide whether Jim's guilty plea was knowing or voluntary. But the court's "doubts" about the knowing-and-voluntary nature of Jim's plea "weigh[ed] heavily in favor of" the court exercising its discretion to allow Jim to withdraw his guilty plea. (R. v.1 at 125.)

Nevertheless, before allowing Jim to withdraw his guilty plea, the district court specifically warned him that, in light of his Rule 410 waiver, if Jim withdrew his guilty plea and went to trial, the Government would be able to present to the jury evidence of

---

[4] The Tenth Circuit has "identified seven factors to guide a [district] court's decision on whether to grant [a defendant's request to withdraw his guilty plea]: (1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources." Sanchez-Leon, 764 F.3d at 1258 (internal quotation marks omitted). "We also have suggested an additional factor to consider: the likelihood of conviction." Id. (internal quotation marks omitted).

Jim's admissions made when he entered that plea. In response to this warning, defense counsel, in open court with Jim present, acknowledged that the Government would be able to use the Rule 410 evidence at trial, but assured the court that Jim was "aware of what he's doing and what the evidence is against him." (R. v.3 at 24.) Jim ultimately elected to withdraw his guilty plea and proceed to trial.

### 4. The district court enforced Jim's Rule 410 waiver by allowing the Government to present Rule 410 evidence to the jury

After the district court permitted Jim to withdraw his guilty plea and the parties were preparing for trial, Jim filed a motion in limine seeking to prevent the Government from presenting the Rule 410 evidence to the jury. In making that motion, Jim did <u>not</u> assert that the plea agreement containing his Rule 410 waiver was unknowing and involuntary on the basis that he had not realized that, when he pled guilty, he would not have a trial. Rather, the bases for Jim's in limine motion were that allowing the government to present to the jury evidence that he had admitted committing the charged offenses would result in an unfair trial and that Jim did not knowingly enter into the plea agreement, with its Rule 410 waiver, because, at the time he made that agreement, he did not have full discovery of all the evidence that the Government had against him. Those issues are not raised now in this appeal.

The district court, in denying Jim's motion in limine, again raised and addressed sua sponte the court's lingering concerns about the knowing-and-voluntary nature of Jim's guilty plea, based on a mistaken belief that he would still have a jury trial after

10

pleading guilty. Jim, 839 F. Supp. 2d at 1180-87. Ultimately, however, the court rejected those concerns as a reason to exclude the Rule 410 evidence because Jim had failed to "come forward with evidence, a sworn statement or testimony or other evidence, suggesting that the Court's concerns and doubts were correct, or that the Court's doubts should preclude a finding that the plea was knowing and voluntary." Id. at 1182. Because Jim had failed to show that his guilty plea was not knowing and voluntary, the district court enforced Jim's Rule 410 waiver, denied his motion in limine, and permitted the Government to use the Rule 410 evidence against Jim at trial. Id. at 1171-74, 1177-87. It is this decision that Jim challenges on appeal.

The district court's two decisions, first to allow Jim to withdraw his guilty plea and then to enforce the Rule 410 waiver contained in the plea agreement, are consistent with decisions from other circuits enforcing Rule 410 waivers contained in plea agreements, and consistent with the particular language of those waivers. See United States v. Nelson, 732 F.3d 504, 512-13, 516-17 (5th Cir. 2013) (enforcing plea agreement's Rule 410 waiver against a defendant who did not enter a guilty plea as required under the plea agreement, where waiver expressly took effect if the defendant failed to enter the guilty plea), cert. denied, 134 S. Ct. 2682 (2014); United States v. Washburn, 728 F.3d 775, 780-82 (8th Cir. 2013) (holding plea agreement, with its Rule 410 waiver, was binding on defendant once he signed the agreement and Rule 410 waiver remained enforceable, pursuant to its express terms, even though the defendant never entered guilty plea required under that agreement and even though district court never

11

accepted the plea agreement); <u>United States v. Quiroga</u>, 554 F.3d 1150, 1153-57 (8th Cir. 2009) (enforcing plea agreement's Rule 410 waiver that by its terms applied if the defendant breached the plea agreement, when the defendant breached the agreement by withdrawing his guilty plea); <u>cf. United States v. Newbert</u>, 504 F.3d 180, 181-88 (1st Cir. 2007) (looking at Rule 410 waiver language in plea agreement, but declining to enforce waiver because of extenuating circumstances in that case).

Jim's Rule 410 waiver expressly stated that it took effect at the time he signed the plea agreement. <u>See</u> <u>Washburn</u>, 728 F.3d at 779-82 (8th Cir.) (enforcing Rule 410 waiver in plea agreement which, according to the terms of the waiver, took effect upon the defendant's signing the agreement, notwithstanding that the defendant later breached the plea agreement by not entering a guilty plea); <u>see also</u> <u>United States v. Escobedo</u>, 757 F.3d 229, 233-34 (5th Cir. 2014) (looking at language of plea agreement containing Rule 410 waiver to determine whether parties intended the waiver to be effective when the defendant signed the agreement or instead when (and if) the court accepted the plea agreement). And Jim does not contend that his Rule 410 waiver was not enforceable for the reason that the district court permitted him to withdraw his guilty plea. Indeed, it would make no sense to deny the efficacy of the Rule 410 waiver just because the guilty plea was withdrawn because that would render the waiver largely meaningless and deprive the Government of the benefit of its bargain. The clearly contemplated situation where the Rule 410 waiver would have any usefulness to the Government is in precisely this situation—where the defendant failed to carry out his side of the bargain to plead

12

guilty and thereby forced the Government to trial.

However, if Jim's entire guilty plea was not knowing and voluntary, then "any additional waivers in the plea agreement," including his Rule 410 waiver, would not have been enforceable. See Mitchell, 633 F.3d at 1001; see also Rollings, 751 F.3d at 1186. Jim's argument on appeal, therefore, is that his entire guilty plea was not knowing and voluntary and, thus, neither was his plea agreement which contained the Rule 410 waiver; therefore, the Rule 410 waiver is unenforceable. So the issue we now address is whether Jim entered his plea agreement knowingly and voluntarily.

**B. Standard of review**

We review de novo the question of whether Jim's guilty plea was knowing and voluntary. See Rollings, 751 F.3d at 1191; see also United States v. Hernandez-Rodriguez, 352 F.3d 1325, 1328 (10th Cir. 2003) (holding appellate court's review is de novo where district court sua sponte raised and explicitly decided issue on merits).

**C. Jim's Rule 410 waiver was enforceable because he failed to demonstrate that his guilty plea was not knowing and voluntary**

**1. The standard by which Jim must demonstrate that his guilty plea was not knowing or voluntary**

It is Jim's burden to show that his guilty plea was not knowing or voluntary. See Rollings, 751 F.3d at 1187. Ordinarily, to meet this burden a defendant would have to prove that his plea was not knowing and voluntary. Id. (addressing knowing-and-voluntary nature of plea agreement); United States v. Salas-Garcia, 698 F.3d 1242, 1255 (10th Cir. 2012) (same). But Jim contends that, in order to meet his burden in this case

13

and avoid his Rule 410 waiver, he need only point to "some affirmative indication" in the record that his plea was not knowing and voluntary. Jim deems this "some affirmative indication" to be a lighter burden than the usual burden a defendant shoulders when challenging the knowing-and-voluntary nature of his guilty plea.

Jim gets this "some affirmative indication" language from United States v. Mezzanatto, 513 U.S 196 (1995). But the Court in Mezzanatto addressed a question different from the one presented here. Mezzanatto addressed whether there should be a per se rule precluding a defendant from ever waiving his Rule 410 protections. Id. at 197. Rejecting such a per se rule, the Court held that, like most constitutional and statutory rights, a defendant can waive Rule 410's protections. Id. at 200-03. In reaching that conclusion, the Court rejected the defendant's policy argument that allowing a defendant to waive Rule 410's protections "invite[d] prosecutorial overreaching and abuse." Id. at 209.

> The mere potential for abuse of prosecutorial bargaining power is an insufficient basis for foreclosing [plea] negotiation altogether. Rather, tradition and experience justify our belief that the great majority of prosecutors will be faithful to their duty. Thus, although some waiver agreements may not be the product of an informed and voluntary decision, this possibility does not justify invalidating all such agreements. Instead, the appropriate response to respondent's predictions of abuse is to permit case-by-case inquiries into whether waiver agreements are the product of fraud or coercion. We hold that absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable.

Id. at 210 (emphasis added) (internal quotation marks, citations omitted).

14

When the Court in Mezzanatto used the language on which Jim relies, it was discussing Rule 410 waivers generally, rejecting a per se rule that a defendant can never waive his Rule 410 protections. Mezzanatto was not addressing, nor was it attempting to articulate, a unique (and lesser) burden that a particular defendant had to meet in order to challenge a Rule 410 waiver in a given case. We, thus, do not read Mezzanatto's "some affirmative indication" language to establish a new and unique standard of proof for determining whether the defendant's Rule 410 waiver is enforceable in a particular case. That is the question we must answer in our case, but that question was not presented in Mezzanatto. Id. at 210-11.

Had the Court in Mezzanatto intended to establish a new standard to measure the knowing and voluntary nature of a waiver of rights, the Court would have done so clearly and directly, instead of using the phrase "some affirmative indication" in a single sentence found toward the end of the opinion, in a section rejecting one of several policy reasons offered to support a (rejected) per se rule prohibiting a defendant from ever waiving his Rule 410 protections. Moreover, if the Court intended to announce a new standard in Mezzanatto, the Court surely would have elaborated on what it meant by "some affirmative indication," and the Court would have explained how that new standard compared with the already-existing legal standard for determining whether a waiver of rights was knowing and voluntary. But the Court did not see the need to elaborate on the meaning of "some affirmative indication" in Mezzanatto because it was not creating a new standard.

15

Nor would it make sense that <u>Mezzanatto</u> would craft a special rule just for Rule 410 waivers. There is no reason why it should be easier, as Jim defines "some affirmative indication," for a defendant to avoid his Rule 410 waiver (or here a guilty plea and entire plea bargain associated with a Rule 410 waiver) than it is for a defendant generally to avoid a guilty plea or a waiver of other constitutional or statutory rights. To the contrary, the Court's point in <u>Mezzanatto</u> was that Rule 410 protections are like most constitutional and statutory rights because they too can be waived. 513 U.S. at 200-06. The underlying premise of <u>Mezzanatto</u> is that Rule 410 protections do not require special evidentiary rules to address waiver. <u>See</u> <u>id.</u> at 200-04. We have found no circuit case expressly interpreting <u>Mezzanatto</u>'s "some affirmative indication" language as a new and different standard by which to measure the knowing and voluntary nature of Rule 410 waivers, or plea agreements and guilty pleas associated with those waivers.

Thus, we conclude that <u>Mezzanatto</u>, by using the phrase "some affirmative indication that the [Rule 410 waiver] agreement was entered into unknowingly or involuntarily," 513 U.S. at 210, was not setting forth a new evidentiary standard for determining whether a particular defendant in a given case knowingly and voluntarily waived his Rule 410 protections. In answering that issue here, then, we make the usual inquiry into whether Jim has proved or established that his guilty plea was not knowing and voluntary.

This is what we did previously in <u>Mitchell</u>, another case addressing the validity of a Rule 410 waiver contained in a plea agreement. At the outset of its discussion, the

16

Mitchell court noted generally that "the protections of . . . Rule [410] may be waived," and then it quoted generally from Mezzanatto: "'[A]bsent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of [Rule 410] is valid and enforceable.'" Mitchell, 633 F.3d at 1000 (quoting Mezzanatto, 513 U.S. at 210.) However, in order to determine whether the defendant's Rule 410 waiver was enforceable in that case, Mitchell used our ordinary evidentiary standards to consider whether the defendant's guilty plea, which was part of the same plea agreement containing his Rule 410 waiver, was knowing and voluntary. 633 F.3d at 1001. The Mitchell court made no further reference to Mezzanatto's "some affirmative indication" language. We take the same approach in this case.

## 2. Jim failed to establish that his guilty plea was not knowing and voluntary

On appeal, Jim claims that his guilty plea was not knowing and voluntary because he did not realize that, by pleading guilty, he would not have a trial. To support his claim, Jim points only to the doubts that the district court sua sponte raised about the knowing and voluntary nature of Jim's guilty plea. Those doubts were based on 1) Jim's pro se assertion to the district court, when Jim was seeking a new attorney, that Jim mistakenly thought that he would still have a jury trial, even after pleading guilty; and 2) the magistrate judge's failure to insure, on the record at the plea colloquy, that Jim understood that by pleading guilty, he was waiving his right to a jury trial. The district court's "doubts," however, in that different and preliminary context, are insufficient for

17

Jim to establish that his guilty plea was not knowing or voluntary. In fact, since that ruling, Jim offered neither his own testimony nor any other evidence that he believed he was retaining a right to proceed to trial notwithstanding clear language in the plea agreement to the contrary, nor did he renew that claim on his own in the district court.

Although the magistrate judge who took Jim's guilty plea did not expressly inform Jim that he was waiving his right to a jury trial by pleading guilty, the written plea agreement and the circumstances surrounding Jim's entry of that plea show that Jim understood that, by pleading guilty, he would not have a trial. See United States v. Tanner, 721 F.3d 1231, 1233-35 (10th Cir. 2013) (per curiam).

The plea agreement itself informed Jim that he had the right to plead not guilty and to have a jury trial and, at that trial, to confront and cross-examine witnesses, to testify and present witnesses in his defense, compelling their attendance if need be, and not to be required to incriminate himself. The plea agreement further stated that Jim "agrees to waive these rights and to plead guilty . . . ." (R. v.1 at 27, ¶ 3.) And Jim declared that,

> [b]y my signature on this plea agreement, I am acknowledging that I am pleading guilty because I am, in fact, guilty of the offense to which I am pleading guilty. I recognize and accept responsibility for my criminal conduct. Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt of the offense to which I am pleading guilty beyond a reasonable doubt.

(Id. at 28, ¶ 8 (emphasis added).) Jim also stated in the plea agreement that he had "thoroughly reviewed all aspects of this case with [his] attorney and is fully satisfied with

18

that attorney's legal representation." (Id. at 26, ¶ 1.) Finally, immediately above Jim's signature, the plea agreement stated "I have read this agreement and carefully reviewed every part of it with my attorney. I understand the agreement and voluntarily sign it." (Id. at 34.) The plea agreement, thus, adequately informed Jim that, by pleading guilty, he was giving up a trial. And by signing the agreement, he acknowledged understanding that trial waiver.

During the change-of-plea hearing, Jim stated in open court that he had read and signed the plea agreement, that he understood the agreement, and that he had no questions about it. Jim also acknowledged that he was pleading guilty of his own free will because he was in fact guilty. His responses during the plea colloquy, thus, generally reinforced that he understood the terms of the plea agreement. And that agreement clearly informed Jim that, by pleading guilty, he was not going to have a trial which, had it occurred, would have had sufficient facts against him to support a conviction.

Furthermore, Jim's personal history indicates that he was capable of understanding the terms of his plea agreement. At the time he signed that agreement, Jim was twenty-eight years old, a high school graduate, with some college credits. And he had twice before pled guilty to drunk driving charges, so he had previous experience with guilty pleas.

In light of the language in the plea agreement informing Jim that, by pleading guilty, he was giving up a trial, and the circumstances surrounding his entry of that plea that show that Jim was capable of understanding, and did understand, the terms of that

19

agreement, we find no error in the district court's ruling that Jim knowingly and

voluntarily entered his guilty plea. See Tanner, 721 F.3d at 1233-34.[5][6]

## II. The Government's cross-appeal challenging Jim's sentences

---

[5] We disagree with Jim's contention that the district court's decision to allow him to withdraw his guilty plea was inconsistent with the court's later determination that Jim failed to show that his guilty plea was not knowing and voluntary. The district court had discretion to permit Jim to withdraw his plea upon Jim's assertion of "a fair and just reason." Fed. R. Crim. P. 11(d)(2)(B); see also United States v. Muhammad, 747 F.3d 1234, 1241 (10th Cir.), cert. denied, 134 S. Ct. 2741 (2014). Leave to withdraw should be freely given. See Sanchez-Leon, 764 F.3d 1248, 1259. Challenging the knowing-and-voluntary nature of Jim's guilty plea, on the other hand, presents a legal question requiring a binary determination—the plea was either knowing and voluntary or it was not—to be made in light of all the circumstances surrounding the plea. See Muhammad, 747 F.3d at 1240; Tanner, 721 F.3d at 1233-34. That determination did not rest on the court's exercise of discretion. See Rollings, 751 F.3d at 1191 (stating that the question of whether a guilty plea is knowing and voluntary is a legal conclusion). In light of these differing legal standards, the district court's decision to exercise its discretion to permit Jim to withdraw his guilty plea was not inconsistent with the court's later conclusion that Jim had failed to show that his plea was unknowing or involuntary. Even if the district court's decisions were inconsistent, however, it would suggest only one of the two is incorrect. Here, only the latter ruling, that Jim failed to show that his guilty plea was not knowing and voluntary, is before us for review. See Quiroga, 554 F.3d at 1156-57 (8th Cir.). And we uphold that decision.

[6] Jim raises two additional arguments. The first is that Rule 410 applies to exclude admissions he made, after his guilty plea, to the probation officer who was preparing the presentence report. We need not address this argument because Jim acknowledges that the Government did not present evidence of these post-plea admissions to the jury and thus that issue is not presented in this appeal. Jim's second argument is that, even if his Rule 410 waiver permitted the Government to present Rule 410 evidence at trial, the Government still could not use that evidence in its case-in-chief. Jim's Rule 410 waiver does not so limit the Government's use of the Rule 410 evidence, however, and this court has previously recognized that, based on a valid Rule 410 waiver, the Government can use Rule 410 evidence in its case-in-chief. See Mitchell, 633 F.3d at 998.

20

In its cross-appeal, the Government challenges the concurrent 360-month sentences that the district court imposed for Jim's aggravated sexual abuse convictions. The Government specifically contends that the district court erred in its interpretation of U.S.S.G. § 2A3.1(b)(4)(B), which enhances a sexual abuse defendant's offense level by two if his victim suffered serious bodily injury. The district court determined that, in deciding whether the serious-bodily-injury enhancement applies in a given case, the sentencing court cannot, as a matter of law, consider injuries resulting directly from the sexual abuse underlying the defendant's convictions. See United States v. Jim, 877 F. Supp. 2d 1018, 1037-41 (D. N.M. 2012). Reviewing that determination de novo, see United States v. Hoyle, 751 F.3d 1167, 1172 (10th Cir. 2014), cert. denied, 135 S. Ct. 944 (2015), we disagree.

To calculate Jim's offense level for his aggravated sexual abuse convictions, the district court had to apply U.S.S.G. § 2A3.1. Section 2A3.1(b)(4)(B) adds two offense levels "if the victim sustained serious bodily injury." "Serious bodily injury" is defined in another section of the guidelines, in the application notes to § 1B1.1, which apply generally to all guideline provisions.

Section 1B1.1's application notes provide two different definitions of "serious bodily injury." First, "'[s]erious bodily injury' means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 app. n.1(L). Second, "'serious bodily injury' is

21

deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or [§] 2242 or any similar offense under state law." U.S.S.G. § 1B1.1 app. n.1(L).

That second definition of serious bodily injury cannot apply when the sentencing court is calculating the offense level for an 18 U.S.C. § 2241 offense like Jim's because the base offense level for that offense already takes into account the fact that the defendant's "offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241." U.S.S.G. § 1B1.1 app. n.1(L). It is for that reason that the application notes for U.S.S.G. § 2A3.1, the guideline specifically addressing sexual abuse convictions, provide that, "for purposes of this [sexual abuse] guideline, 'serious bodily injury' means conduct other than criminal sexual abuse, which is already taken into account in the base offense level under" § 2A3.1(a). U.S.S.G. § 2A3.1, app. n. 1 (emphasis added). The two-level serious-bodily-injury enhancement can still apply to a sexual abuse offender, but it must be based on the fact that the victim's injuries meet the first definition of "serious bodily injury": "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 app. n.1(L).

The district court concluded that, in deciding whether the victim's injuries meet this definition of "serious bodily injury," the court could not, as a matter of law, consider any injuries that resulted directly from the underlying sexual abuse itself. Jim, 877

22

F. Supp. 2d at 1037-38.  The district court based that conclusion on the language of

§ 2A3.1's application note 1:  "[F]or purposes of this guideline, 'serious bodily injury'

means conduct <u>other than</u> criminal sexual abuse, which already is taken into account in

the base offense level under" § 2A3.1(a).  (Emphasis added.)

Admittedly that application note's language—in particular, the phrase "injury

means conduct"—is perplexing.  But read in context, we conclude that language means

that the sentencing court, in calculating a sexual abuse defendant's offense level, cannot

apply the serious-bodily-injury enhancement based on the fact that the offender

committed a sexual abuse offense.  It is that "conduct . . . which already is taken into

account in the base offense level" for sexual abuse offenses, U.S.S.G. § 2A3.1, app. n.1.

The language of the application note does not preclude the sentencing court, in deciding

whether a sexual offender's victim suffered serious bodily injury, from considering

injuries resulting directly from the sexual abuse.

Moreover, attempting to distinguish between injuries suffered as a direct result of

the sexual abuse and those suffered during the incident but before or after the sexual

abuse is an unworkable requirement.  In many cases, it will be difficult to separate those

injuries that resulted directly from the sexual abuse from injuries suffered while the

offender was forcing the victim's submission, for example, or from injuries compelling

the victim's silence.

For these reasons, we conclude that a sentencing court can consider injuries the

victim suffered resulting directly from the sexual abuse as well as those suffered during

23

relevant conduct surrounding that offense, see U.S.S.G. § 1B1.3(a)(1), when determining whether the victim suffered serious bodily injury, defined as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation," U.S.S.G. § 1B1.1 app. n.1(L). Of course, regardless of when such injuries were suffered they still must satisfy the fairly egregious injury standard of U.S.S.G. § 1.1B1, app. n.(1)(L) to justify an enhancement under § 2A3.1(b)(4)(B).

Our interpretation of § 2A3.1(b)(4)(B)'s serious-bodily-injury enhancement is similar to the interpretation adopted by the Eighth Circuit. See United States v. Long Turkey, 342 F.3d 856, 858 (8th Cir. 2003) (holding that the sentencing court, in determining whether the serious-bodily-injury enhancement should apply in a given case, can consider "injuries resulting from an episode of criminal sexual abuse"; noting that "only that the act of sexual abuse is insufficient by itself to support" the enhancement). See generally United States v. Volpe, 224 F.3d 72, 78 (2d Cir. 2000) (noting that § 2A3.1(b)(4)'s "degree-of-injury adjustment punishes the assailant for the injuries to the victim that result from the assault").

The district court here declined to consider the victim's injuries that resulted directly from the sexual abuse in an effort to avoid double-counting the defendant's conduct. Jim, 877 F. Supp. 2d at 1039-40. Generally, "impermissible 'double counting' occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are

24

indistinct, and serve identical purposes." United States v. Joe, 696 F.3d 1066, 1070 (10th Cir. 2012) (internal quotation marks omitted). The district court worried in this case that basing the serious-bodily-injury enhancement on injuries resulting directly from the sexual abuse would impermissibly double count the victim's injuries, which "are already taken into account in the base offense level for criminal sexual abuse," § 2A3.1 app. n.1. Jim, 877 F. Supp. 2d at 1039. But the base offense level takes into account the offender's conduct in committing a sexual abuse offense, not the injuries the victim suffered. The district court's reasoning erroneously treats the victim's injuries as identical to the defendant's conduct. While in any given case there may be a correlation between the egregiousness of the defendant's conduct in committing the sexual abuse and the injuries the victim suffered as a direct result of the sexual abuse, that will not always be the case. And, in any event, the guidelines can enhance a defendant's offense level both for the egregiousness of his conduct in committing a sex offense and for the injuries inflicted during that offense because those enhancements address different and distinct matters. Furthermore, the high standard for injuries required to satisfy U.S.S.G. § 1B1.1, app. n.1(L) provides adequate insurance against double-counting because the injuries described there fall outside the standard or heartland range of injuries that could be expected in a baseline offense of criminal sexual abuse under § 2A3.1(a). So long as the district court does not impose the serious-bodily-injury enhancement just on the fact that

25

criminal sexual abuse occurred, there will not be the type of impermissible double-counting about which the district court was concerned.[7]

Having determined that the district court erred in refusing to consider whether § 2A3.2(b)(4)(B)'s two-offense-level enhancement for serious bodily injury could apply in this case, we remand for resentencing. On remand, the district court can consider, in the first instance, whether the victim's injuries amounted to serious bodily injury, defined as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."[8]

---

[7] The district court also raised a second, very different, double-counting concern: The district court worried that applying § 2A3.1(b)(4)(B)'s two-level serious-bodily-injury enhancement could double count the defendant's use of force in cases like this one, where the court also applied § 2A3.1(b)(1)'s four-offense-level enhancement because the offense involved sexual abuse by force. Jim, 877 F. Supp. 2d at 1039-40. That is not a concern here, however, because the Government, at least on appeal, seeks only to support the two-level serious-bodily-injury enhancement with injuries that the victim suffered as a direct result of the sexual abuse. The Government does not seek to support the serious-bodily-injury enhancement further with injuries the victim suffered as a result of Jim forcing her to submit to that sexual abuse by dragging her off the couch and down the hallway into the bedroom and then holding her down.

[8] Because we are remanding for resentencing, we do not consider here Jim's argument challenging the substantive reasonableness of his 360-month sentence. See United States v. Kieffer, 681 F.3d 1143, 1165 (10th Cir. 2012). But, in order to provide guidance for resentencing, we address and reject Jim's argument, made for the first time on appeal, that the district court was somehow bound by the Government's concession in the plea agreement underlying Jim's withdrawn guilty plea that an advisory range of 155 to 188 months in prison was appropriate in Jim's case. The Government's concession, made in a Rule 11(c)(1)(C) plea agreement, never bound the district court because Jim withdrew his guilty plea before the court had an opportunity to accept the plea agreement underlying the plea. And, by the time the district court sentenced Jim, after his jury trial,

## CONCLUSION

For the foregoing reasons, we AFFIRM Jim's convictions.  But we REMAND, directing the district court to VACATE Jim's two concurrent 360-month sentences and to resentence him after considering whether to apply § 2A3.1(b)(4)(B)'s two-offense-level enhancement for causing serious bodily injury.

---

circumstances relating to Jim's sentence had changed.  At the time that Jim and the Government entered into the plea agreement, he was charged with only one count of aggravated sexual abuse; little discovery had occurred; DNA tests had not yet linked Jim physically to the victim; and Jim was entitled to a three-offense-level reduction for accepting responsibility by pleading guilty, see U.S.S.G. § 3C1.1.  By the time the district court sentenced Jim, after trial, he had been charged with and convicted of two counts of aggravated sexual abuse; and he was no longer entitled to the three-offense-level reduction for accepting responsibility because he put the Government to its proof by going to trial.  Further, the district court enhanced Jim's offense level after finding that he perjured himself at trial, an enhancement that no one envisioned at the time of the earlier plea agreement.  We, therefore, reject Jim's assertion that the sentencing court is somehow bound by the advisory guideline range to which the parties originally agreed in the plea agreement.